UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Surefox North America Inc,                          Civ. No. 24-4492 (PAM/ECW)
Surefox Consulting LLC, Xenture
Inc,

                    Plaintiffs,

v.                                                  **MEMORANDUM AND ORDER**

Wyatt Huls and Vigilant North, LLC,

                    Defendants.

_____

       This matter is before the Court on cross-Motions to Dismiss.  For the following

reasons, the Motions are denied.

**BACKGROUND**

       In 2016, Joshua Szott and Brian Sweigart, both United States Army veterans,

founded Plaintiff Surefox Consulting LLC, a security services consulting firm.  (Am.

Compl. (Docket No. 36) ¶¶ 15–18.)  In 2018, Surefox Consulting hired Defendant Wyatt

Huls, also a veteran, in an entry-level position.  (Id. ¶ 24.)  Huls subsequently began

working for another Surefox entity, Surefox North America Inc. ("Surefox NA"), and later

became its Senior Director for Operations and Intelligence, one of the company's ten most

senior employees.  (Id. ¶¶ 24–27.)  While employed by Surefox,[1] Huls executed three

agreements: (1) an Employment Agreement with Surefox NA; (2) a Confidential

_____

[1]     Surefox refers to its various entities—Surefox North America Inc, Surefox
Consulting LLC, and Xenture Inc—collectively as "Surefox."  (See Am. Compl. at 1.)  The
Court will do the same unless more specificity is required.

Information and NDA with Surefox Consulting; and (3) a Conflict of Interest Disclosure Form with Surefox NA.  (Id. ¶¶ 30, 33, 36.)

"In 2022, Surefox developed a confidential business plan to pursue a series of aggressive and strategic mergers and acquisitions."  (Id. ¶ 2.)  Surefox placed David Hugh Murray, its general counsel, in charge of executing this plan.  (Id. ¶¶ 2, 44, 49.)  Huls worked with Murray to do so.  (Id. ¶¶ 45–46.)  While developing an acquisition strategy, Murray engaged consulting firm Purpose Equity, LLC, even though "Purpose Equity was inexperienced in the security services industry."[2]  (Id. ¶ 49.)  In August 2022, Purpose Equity provided Surefox a confidential list of more than 500 potential-target companies, including Kellington Protection Service, LLC ("Kellington") and REDCON Solutions Group ("REDCON").  (Id. ¶¶ 52–53.)

"By 2023, Surefox was considering two growth strategies.  One involved acquiring Kellington and two other security services companies.  The other strategy involved Cold Bore Capital," a private equity firm.  (Id. ¶ 58.)  Huls and Murray attended a two-day meeting with Cold Bore.  (Id.)  At this point, Surefox created a one-year "Strategic Pathways Timeline," which it labeled as "confidential and proprietary."  (Id. ¶ 59.)  The Timeline "described a multi-phase acquisition plan for both the Cold Bore Capital Strategy and the strategy involving Kellington" and "contained estimated purchase prices, operational integration concerns, to-do items for each strategy, and 'roll up' plans."  (Id.) Murray, who now served as General Counsel at Xenture Inc., a Surefox affiliate, helped

---

[2]    Apparently, Murray had a personal relationship with Purpose Equity Managing Director, Dan D'Alberto, which prompted the engagement.  (Id.)

create the Timeline, which Huls was privy to.  (Id. ¶¶ 43, 59.)  "In summer 2023, Kellington and Surefox NA entered two letters of intent concerning the proposed acquisition of Kellington," estimating that the deal would close in December 2023.  (Id. ¶ 60.)

Surefox also became interested in acquiring StaffWizard, LLC, "a start-up security guard management software company that provided a variety of payroll-related activities."  (Id. ¶¶ 61–62.)  In June 2023, Murray began conducting due diligence on StaffWizard, and Huls began vetting StaffWizard's software.  (Id. ¶ 63.)  In August 2023, Huls encouraged Surefox to buy StaffWizard.  (Id. ¶ 66.)

In October 2023, Murray resigned from Xenture.  (Id. ¶ 68.)  Around that time, "Surefox discovered that certain critical operations had been mismanaged."  (Id. ¶ 70.)  They traced these operations back to Huls and were surprised because he had been a good employee, but they gave him leeway because he had been on parental leave in 2023.  (Id. ¶¶ 71–72.)  On November 27, 2023, Huls submitted a letter of resignation to Surefox NA.  (Id. ¶ 73.)  His last day was December 7, 2023.  (Id. ¶ 4.)

Surefox claims that Huls and Murray conspired to leave Surefox and steal its acquisition strategy.  On Murray's last day of employment with Xenture, he filed Delaware incorporation documents for what eventually became Sciath Security, LLC ("Sciath"), which according to its website, provides "manned and remotely managed security," just like Surefox NA.  (Id. ¶¶ 84–85.)  And, on November 6, 2023, Huls founded Vigilant North, LLC, "a competing security services company" that "specialize[s] in physical security and protective services and "prioritize[s] the recruitment of military and law enforcement veterans."  (Id. ¶¶ 86–87.)  Surefox alleges that Huls did so "with plans to roll

that new venture and Surefox's acquisition targets under the Sciath Security umbrella led by Murray." (Id. ¶¶ 3, 76–83, 86.) At the time, Huls served as Vigilant North's CEO. (Id. ¶¶ 3, 87.) Huls did not disclose to Surefox any of his activities regarding Vigilant North. (Id. ¶ 86.)

Surefox caught wind of Huls's activities with Vigilant North in April 2024 when StaffWizard's CEO informed Surefox that Huls, Murray, and D'Alberto wanted to acquire StaffWizard. (Id. ¶¶ 77–78.) Later, Surefox learned from Cold Bore Capital that Huls and Murray had contacted it to "pursue with their new ventures the same confidential roll up strategy Surefox had explored with Cold Bore Capital." (Id. ¶ 82.) Surefox sent Huls and Vigilant North cease and desist letters, which were ignored. (Id. ¶ 99.) Ultimately, in October 2024, Surefox acquired StaffWizard, but the acquisition was unduly delayed by Huls, Vigilant North, Murray, and Sciath, thereby causing economic losses to Surefox. (Id. ¶ 100.)

In September and October 2024, Sciath acquired Kellington, REDCON, and Vigilant North. (Id. ¶ 102.) Surefox claims that "[b]ased on discussions that Surefox had with other private equity firms, the ideal transaction cost for a purchase such as Sciath's would be in the $30 to $50 million range." (Id. ¶ 103.) Surefox further alleges that "Murray, Sciath, Huls, and Vigilant North, were able to secure millions of dollars in funding using Surefox's acquisition strategy and targets," and "[i]n Surefox's experience, it is abnormally fast for a startup with only a few employees and no established revenue history to fund and close three acquisitions within a year of formation." (Id.) In December 2024, Szott learned that Huls, Vigilant North, Murray, and Sciath were pursuing another

security services company listed on the Strategic Pathways Timeline, which Surefox was also pursuing. (Id. ¶ 104.)

This lawsuit followed. Surefox raises five claims: (I) breach of contract against Huls; (II) breach of fiduciary duty against Huls; (III) misappropriation of confidential information against Huls and Vigilant North; (IV) aiding and abetting breach of fiduciary duty against Huls and Vigilant North; and (V) tortious interference with contract against Huls and Vigilant North. Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and alternatively move for a more definite statement under Fed. R. Civ. P. 12(e).

Huls filed Amended Counterclaims, portraying his account of events leading to his resignation. In August 2023, Surefox NA lost a contract with Google worth approximately $20,000,000. (Am. Ans. & Am. Countercl. "Am. Countercl." (Docket No. 58) ¶ 215.) Huls alleges that "[d]ue to this loss, [Surefox co-founder Joshua] Szott made changes to Surefox's standard billing practices, and Szott began putting restrictions on how many personnel could be staffed at events due to overhead costs." (Id.) Huls alleged that Szott changed the practice for tracking employee time at an event, "instruct[ing] Huls to bill for a full eight hours for each worker's shift, even if a worker was only staffed for one hour. Szott's explanation for the practice was to avoid extra complications." (Id. ¶ 216.)

In October 2023, while working at an event for Google during which Surefox provided security guards at checkpoints, Huls alleges that "Szott decided to adopt a 'round robin' approach" that he had used at a previous event. (Id. ¶ 217.) Huls claims that "Szott would shift [Surefox employees] from posts already visited by the client to posts the client

5

had yet to visit.  This would create the appearance that all posts were manned at all times—due to the 'round robin' effect."  (Id.)  Huls claims that Szott would bill the client as if security personnel had manned all posts for all hours.  (Id.)

"Huls raised his concerns regarding the fraudulent billing practices at a meeting with upper management.  Szott refused to admit what he asked Huls to do when questioned by Huls in front of other company leaders."  (Id. ¶ 219.)  Huls claims that Surefox began retaliating against him for raising concerns with Szott's billing practices.  (Id. ¶ 220.)  Huls refused to engage in the Szott's billing method, and eventually resigned from his position at Surefox NA.  (Id. ¶ 221.)

Huls brings three counterclaims: (I) a constructive discharge claim against Surefox NA under Cal. Lab. Code § 1102.5; (II) a whistleblower claim against Surefox NA in violation of Minn. Stat. § 181.932; and (III) an unfair competition claim against Surefox NA and Surefox Consulting in violation of Cal. Bus. & Prof. Code § 17200.  Surefox moves to dismiss Huls's Amended Counterclaims under Fed. R. Civ. P. 12(b)(6).  The Court will consider the cross-Motions in turn.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6).  A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When evaluating a motion

to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true. Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim. Iqbal, 556 U.S. at 678. At this stage, the Court assumes the allegations are true and views them in the light most favorable to the non-moving party. See Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 933 n.4 (8th Cir. 2012).

## A.    Motion to Dismiss Amended Complaint

### 1.    Breach of Contract

Surefox alleges that Huls breached his Employment Agreement and his Confidential Information and NDA.

#### a.    Employment Agreement

The "Employment Agreement required Huls to act at all times in the best interests of Surefox NA, and Huls agreed that he would not directly or indirectly utilize Surefox NA's confidential information for his own business." (Am. Compl. ¶ 110.) Surefox alleges that Huls "[b]reached the Employment Agreement by starting a competing venture while still employed at Surefox NA and planning to use Surefox NA's business strategies while still employed by Surefox NA, thereby competing against Surefox and failing to act in the best interests of Surefox NA." (Id. ¶ 112.) Surefox also alleges that Huls breached the Employment Agreement and Confidential Information and NDA by using "Surefox NA's confidential information, such as StaffWizard and other companies' interest in acquisition, the status of negotiations with acquisition targets, opportunities to pursue with investors like Cold Bore Capital, and Surefox's evaluations of StaffWizard." (Id. ¶ 113–14.)

7

The Employment Agreement's choice of law provision dictates that California law applies. Under Cal. Bus. and Prof. Code § 16600, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." But "[c]ourts have found an exception to section 16600, however, where is the agreement is 'necessary to protect the employer's trade secrets' or confidential information.'" EDC Techs., Inc. v. Seidel, 216 F. Supp. 3d 1012, 1015 (N.D. Cal. 2016) (quoting Muggill v. Reuben H. Donnelley Corp., 398 P.2d 147, 149 (Cal. 1965)). Courts have determined that "the fate of [a] Confidentiality Provision depends on how it is interpreted and enforced." Olson v. World Fin. Grp. Ins. Agency, LLC, No. 24-CV-00477-EJD, 2025 WL 1101520, at *6 (N.D. Cal. Apr. 14, 2025). However, § 16600 "does not affect limitations on an employee's conduct or duties while employed." Techno Lite, Inc. v. Emcod, LLC, 44 Cal. App. 5th 462, 471 (2020) (citations omitted). California law allows an employee to prepare to compete with his or her current employer before resigning, but it prohibits an employee from transferring his or her loyalty to a competing employer while still employed. Id. "During the term of employment, an employer is entitled to its employees' undivided loyalty." Id. (quotation omitted).

Huls argues that the Employment Agreement is facially void under § 16600, because it is overly broad and thus a de facto noncompete. Surefox responded that the Court should defer determining the Agreement's validity at the pleading stage. Indeed, "[p]arsing the agreement and determining the validity of its various provisions are premature at the pleading stage." E.D.C. Techs., Inc., 216 F. Supp. 3d at 1016. Surefox

has sufficiently alleged a breach-of-contract claim regarding the Employment Agreement, and Defendants' Motion is denied as to this claim.

### b. Confidential Information and NDA

Surefox claims that Huls breached the Confidential Information Agreement and NDA with Surefox Consulting "by negligently handling and disclosing Surefox Consulting's confidential info, including StaffWizard and other companies' interest in acquisition, the status of negotiations with other targets, opportunities to pursue with investors like Cold Bore Capital, and Surefox's evaluations of StaffWizard." (Am. Compl. ¶ 114).[3]  Surefox also alleges that Huls breached the Confidential Information Agreement and NDA by agreeing to assign to Surefox "all royalties, renumerations, and emoluments that have resulted, will result or may result from any disclosure, publication, or revelation of Confidential Information."  (Id. ¶ 115.)  And Surefox further claims that he used Surefox's confidential information "to grow Vigilant North, and as CEO of Vigilant North, prime Vigilant North for acquisition by Sciath, among other things."  (Id. ¶ 116.)

Huls contends that the Confidential Information and NDA's restrictions are overbroad and undermine public policy.  Surefox argues that it is not enforcing the Confidential Information and NDA as a noncompete because Surefox's claims center on Huls's actions regarding Surefox's internal acquisition and funding strategies, not the

---

[3]    Surefox asserts that Minnesota law applies to this claim.  (Docket No. 67 at 12.) Huls contends that it is "not expressly governed by California law," but concedes that Minnesota and California law end in the same result.  (Docket No. 48 at 19.)

performance of security services.  Because the Court must construe Surefox's factual assertions as true, the Motion is denied as to this claim.

### 2. Breach of Fiduciary Duty

 "A fiduciary relationship is characterized by a 'fiduciary' who enjoys a superior position in terms of knowledge and authority and in whom the other party places a high level of trust and confidence." Carlson v. SALA Architects, Inc., 732 N.W.2d 324, 330–31 (Minn. Ct. App. 2007) (citations omitted).[4]  "[A]n agent owes fiduciary duties to its principal." U.S. Bank Nat'l Ass'n v. San Antonio Cash Network, 252 F. Supp. 3d 714, 721 (D. Minn. 2017) (Kyle, J.).  "Where such duties exist, even if arising from a contract, an alleged breach of those duties is distinct from the [alleged] breach of contract." Fairview Health Servs. v. Armed Forces Off. of Royal Embassy of Saudi Arabia, 705 F. Supp. 3d 898, 916–17 (D. Minn. 2023) (Tostrud, J.) (citation and quotation omitted).  "In Minnesota, a breach-of-fiduciary-duty claim has four elements:  [1] duty, [2] breach, [3] causation, and [4] damages.'" Id. at 916 (quoting Hansen v. U.S. Bank Nat'l Ass'n, 934 N.W.2d 319, 327 (Minn. 2019)).  There is no dispute about whether Huls was a fiduciary of Surefox.

Surefox alleges that Huls breached his duties of loyalty and confidentiality.  Huls's Conflict of Interest agreement with Surefox required him to disclose "[a]ny actual and potential conflicts of interest."  (Am. Compl. Ex. 3 (Docket No. 36-3) at 2.)  That agreement defined conflicts of interest to include: "[s]tarting a company that provides services similar to your full-time employer," "[s]haring confidential information about your employer with

---

[4]     The parties agree that Minnesota law applies to this claim.

a competitor," and "doing business or work for a competitor." (Id. at 5.) Surefox claims that Huls breached his duty of loyalty by: founding Vigilant North while still employed by Surefox, obtaining information about Surefox's strategies and acquisition targets, and using Surefox's confidential information to compete against it. (Am. Compl. ¶ 94.)

Huls argues that this claim should be dismissed because the only discrete act that Surefox alleges during his employment with Surefox is forming Vigilant North, in violation of his duty of loyalty. He argues that doing so is "preparation," which the law allows. But whether Huls's actions constituted preparation is a fact-specific inquiry inappropriate at this stage of the proceedings. Considering Surefox's allegations to be true, the Motion is denied as to duty-of-loyalty aspect of the claim.

As to Huls's alleged breach of the duty of confidentiality, Surefox claims that he misused its confidential information by using its acquisition strategy with StaffWizard, which allegedly led to a delay in Surefox's acquisition of StaffWizard. Surefox also claims that Huls used his knowledge of its business strategies to solicit Cold Bore Capital with Vigilant North and Sciath, and that he used information about Surefox's acquisition process and negotiations to solicit other targets, including Kellington and REDCON, which Sciath eventually acquired, along with acquiring Vigilant North. Because the duty of confidentiality continues after an employee leaves an employer, and the Court must accept the facts as pled, the Motion is denied as to this claim.

### 3.    Misappropriation of Confidential Information

"In order to establish claims for misappropriation of confidential information and trade secrets, a plaintiff must show that: (1) the information is not generally known or

ascertainable; (2) the information provides a demonstrable competitive advantage; and (3) the information was subject to reasonable efforts to maintain its secrecy." <u>Minnesota Life Ins. v. AXA Inv. Mgr.</u>, Civ. No. 03-4383, 2005 WL 1475336, at *4 (D. Minn. June 22, 2005) (Frank, J.).  Surefox and Xenture allege that Huls and Vigilant North misappropriated confidential information about acquisition targets, personal and business relationships, business strategies, clients, bidding processes, financial information, the status of negations with various targets, and analysis of business decisions.  (Am. Compl. ¶ 127.)  Surefox adequately pleads that this information is not readily ascertainable, was developed over time using due diligence, was only shared with its senior employees, and operated under various nondisclosure agreements.  Thus, Surefox's allegation about Defendants misusing its confidential information states a claim.

### 4.    Aiding and Abetting Breach of Fiduciary Duty

Under Minnesota law, to state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege that:  (1) a third party breached a fiduciary duty that injured the plaintiff, (2) the defendant knew that the third party's conduct constituted a breach of duty; and (3) the defendant substantially assisted or encouraged the third party in achievement of the breach of duty.  <u>Lusk v. Life Time Fitness, Inc.</u>, 213 F. Supp. 3d 1119, 1136 (D. Minn. 2016) (Tunheim, J.) (citing <u>Witzman v. Lehrman, Lehrman & Flom</u>, 601 N.W.2d 179, 187 (Minn. 1999)).

### a.    Aiding and Abetting Huls's Breach

Surefox alleges that Vigilant North had constructive knowledge that Huls owed a fiduciary duty to Surefox NA and Xenture and that Vigilant North aided and abetted Huls's

breach of that duty. Therefore, Surefox's allegations as to aiding and abetting Huls's breach are sufficient to defeat this Motion.

### b. Aiding and Abetting Murray's Breach

Surefox further claims that Vigilant North aided and abetted Huls's breach of his fiduciary duty and that Huls and Vigilant North aided and abetted Murray's breach of fiduciary duty. Whether Murray breached his fiduciary duty is not for this Court to determine, as he is not a party in this case. Thus, the Court denies the Motion as to Huls and Vigilant North allegedly aiding and abetting Murray's breach, as another court must determine whether Murray breached his duty in the first instance.

### 5. Tortious Interference with Existing Contract

"To succeed on a claim for tortious interference with contract, [a plaintiff] must show '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages.'" CPI Card Grp., Inc. v. Dwyer, 294 F. Supp. 3d 791, 816 (D. Minn. 2018) (Nelson, J.) (quoting E–Shops Corp. v. U.S. Bank Ass'n, 678 F.3d 659, 664 (8th Cir. 2012) (internal quotation and citation omitted)).

Surefox alleges that Huls interfered with Murray's contracts. But again, Murray is not a party to this lawsuit, and another court must first determine whether Murray breached his contract. Thus, the Motion is denied without prejudice as to this claim.

### B. Motion to Dismiss Amended Counterclaims

As an initial matter, Huls argues that this Motion is an improper, successive Rule 12 Motion. But Surefox's first Motion to Dismiss Huls's Amended Counterclaims was

13

denied as moot once Huls filed his Amended Answer and Amended Counterclaims. (Docket No. 37.)  Because the Court never adjudicated Surefox's first Motion to Dismiss, Huls's argument lacks merit.

### 1.    California Constructive Discharge

California law prohibits employers from retaliating against "an[y] employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Cal. Lab. Code § 1102.5(c).  To state a whistleblower claim under this provision, Huls must allege that:  (1) he engaged in a protected activity, (2) that he suffered an adverse employment action; and (3) that there was a causal link between his protected activity and the adverse action.  City of Whittier v. Everest Nat'l Ins., 97 Cal. App. 5th 895, 907 (2023). Huls alleges that "[d]ue to Surefox NA's fraudulent billing practices, [he] was forced to resign after refusing to partake in Szott's round robin method and refusing to engage in improper billing methods."  (Am. Countercl. ¶ 226.)

First, Surefox argues that Huls cannot invoke this law, because he moved to Minnesota in 2022, (id. ¶ 213), and the California Labor Code cannot be applied extraterritorially.  Surefox further argues that Huls does not allege a connection between Surefox's supposed retaliation and California.  But Huls has established Surefox NA's citizenship is in California, its principal place of business is there, Google is a California company, and Huls performed work for Surefox in California during this time.  (See, e.g., Am. Compl. Ex. 1 (Docket No. 36-1) at 1; Am. Countercl. ¶¶ 208, 210, 213.)  Thus, for

this Motion, Huls has sufficiently alleged a connection with California and the Court does not find that Huls is attempting to extraterritorially enforce the law.

Second, Surefox claims that Huls fails to plead the essential elements of a whistleblower claim, because he fails to identify a law or regulation that Surefox NA violated.  But, as Huls argues, he maintains that Szott's billing practice was fraudulent, and fraud violates California Civil Code §§ 1709 and 1710.

Third, Surefox contends that Huls fails to plead the essential elements of a constructive discharge claim under § 1102.5(c), because a reasonable person would not have felt forced to resign given the facts alleged.  Yet the Court must accept Huls's allegations as true, and for that reason, the Motion is denied as to this counterclaim.

**2.    Minnesota Whistleblower Act**

The Minnesota Whistleblower Act ("MWA") protects employees who in good faith report violations of law, prohibiting employers from retaliating against them and further protecting employees against retaliation for refusing to follow an employer's order to violate the law.  Minn. Stat. § 181.932, subd. 1(1), (3).  Huls alleges that "[d]ue to Surefox NA's fraudulent billing practices, [he] was forced to resign after refusing to partake in Szott's round robin method and refusing to engage in improper billing methods."  (Am. Countercl. ¶ 231.)

Surefox argues that Huls was not a whistleblower because his job responsibilities included reporting any irregularities in staffing and billing practices.  But Huls claims that he was reporting more than mere irregularities or disputes over internal policy, he was

flagging to upper management what he maintains were the co-founder's violations of the law. The Motion is denied as to this counterclaim.

### 3.    Unfair Competition Law

California's Unfair Competition Law ("UCL") prohibits "unfair competition," which it defines as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Huls alleges that the confidentiality clauses in his Employment Agreement and Confidential Information and NDA "are both so overbroad that they are rendered de facto non-compete covenants, and thus, void under Section 16600.1." (Docket No. 90 at 11–12.) He also claims that Surefox did not notify him by the established deadline that the clauses were void. (Am. Countercl. ¶¶ 235–38.) Huls seeks injunctive relief against Surefox NA and Surefox Consulting preventing them from enforcing the de facto noncompete covenants against him, as well as civil penalties and damages in the form of attorney's fees and costs.

Surefox first asserts that Huls cannot apply the UCL extraterritorially, because Huls does not allege that the wrongful conduct took place in California, emphasizing that Huls moved to Minnesota in 2022. But the heart of Huls's claim is that including what he contends are de facto noncompetes in the agreements was the violation of the UCL, not Surefox's attempt to enforce those provisions in Minnesota. Thus, for this Motion, Huls alleges that the conduct took place in California. Similarly, Surefox argues that this claim violates the litigation privilege. But because Huls's UCL claim is not based on Surefox's enforcement of his employment agreements, this argument is not persuasive.

16

Finally, Surefox asserts that Huls lacks standing because he does not sufficiently allege that he has an economic injury to support his claim. He seeks attorney's fees, costs, and expenses incurred under Cal. Lab. Code. § 1102.5. Indeed, some California courts have determined that plausibly alleging attorney's fees can establish damages under the UCL. See, e.g., Walker v. Bayview Loan Servicing, Civ. No. 20-02944-LB, 2020 WL 13836133, at *6 (N.D. Cal. Aug 13, 2020); Koller v. W. Bay Acquisitions, LLC, No. C-12-00117 CRB, 2012 WL 2862440, at *8 (N.D. Cal. July 11, 2012). Surefox contends that Huls's "private right of action will [not] confer a significant benefit on the public" or a "large class of persons" to justify being awarded expenses, as the law requires. (Docket No. 92 at 15.) But whether others will benefit from the law is beyond the scope of this Motion, and Surefox's Motion is denied as to this counterclaim.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Docket No. 46) is **DENIED**; and

2. Plaintiffs' Motion to Dismiss Defendant Wyatt Huls's First Amended Counterclaims (Docket No. 82) is **DENIED**.

Dated: August 25, 2025                          *s/ Paul A. Magnuson*
                                                Paul A. Magnuson
                                                United States District Court Judge